IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CONNIE H. WILLOUGHBY, | } | |
| | } | |
| Plaintiff, | } | |
| | } | CIVIL ACTION NO. |
| v. | } | 06-AR-1483-S |
| | } | |
| BELLSOUTH BILLING, INC., | } | |
| | } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Bellsouth
Billing, Inc. ("Bellsouth"), for summary judgment in the above-
entitled action brought by plaintiff, Connie H. Willoughby
("Willoughby"). Willoughby claims that Bellsouth discriminated
against her on the basis of her disability and age, alleging
violations of the Americans with Disabilities Act of 1990, 42
U.S.C. § 12101 *et seq.* ("ADA") and the Age Discrimination in
Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"). For the
reasons that follow, the court will grant Bellsouth's motion.

*Summary Judgment Facts*[1]

---

[1] Summary judgment is appropriate where the moving party demonstrates
that there is no genuine issue of material fact and that it is entitled to
judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v.
Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met
its burden, the court must view the evidence, and all inferences drawn
therefrom, in the light most favorable to the non-movant. *Hairston v.
Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance
with this standard, the following statement of facts includes both undisputed
facts and the facts according to the plaintiff's evidence, where there is a
dispute.

Willoughby began her employment with Bellsouth on February 26, 1973. Prior to that, Willoughby had worked in a variety of secretarial/clerical roles with numerous other employers. With Bellsouth, Willoughby worked as a stenographer, administrative assistant, and billing support services specialist[2] ("billing specialist"). The claims brought in this action arise out of Willoughby's work as a billing specialist, which began in 2002 and was the last job she held at Bellsouth prior to her retirement. The billing specialist job required Willoughby to help create mock-ups of telephone bills, which were used by Bellsouth for sales and regulatory purposes. Randall Reeves ("Reeves") was Willoughby's supervisor. Willoughby was fifty-two (52) years old when she began as a billing specialist and came under the supervision of Reeves. According to Willoughby, the billing specialist position was more intense, had more time constraints, and required a knowledge of more computer systems than the previous jobs she had held.

At some point soon after beginning as a billing specialist, Willoughby was diagnosed with clinical depression and attention deficit hyperactivity disorder ("ADHD")[3]. Because of performance difficulties, which Willoughby claims to have been partly caused

---

[2] The official title of this position is "Regulatory Accounting Services Support/Supervisor". (Compl. ¶ 8.)

[3] Willoughby also claims to suffer from anemia; however, the court will not treat the anemia as a separate impairment because Willoughby only mentions it for the purpose of suggesting that it may the cause of her depression.

by her medical conditions, Reeves in 2003 reassigned Willoughby to a different position that involved preparing reports[4]. However, being unsatisfied with her performance in the report preparation role, in April of 2004 Reeves moved Willoughby back to the mock-up role. Willoughby acknowledged in her 2003 performance review that her job performance was "poor" due to her medical conditions. Specifically, she claims that her ability to pay attention to detail, think clearly, and remember was impaired.

After being moved back to the mock-up role, Willoughby continued to experience difficulty completing her work to the satisfaction of Reeves and of other supervisors and co-workers. For instance, in her 2004 performance evaluation, Reeves noted the following problems with Willoughby's job performance: inaccurate monthly reports, improperly formatted and incomplete message verification guide, inaccurate verification and insert data, negative feedback on mockups, general problems with timeliness, and an overly-blunt communication style. However, there were many areas where Willoughby was given very positive reviews, such as in consistently keeping her requesters informed, helping her co-workers, attending meetings, and being concerned about customer satisfaction. In the end, Willoughby was given an

---

[4] In his deposition, Reeves acknowledged that Willoughby informed him that she suffered from ADHD and depression. (Reeves Dep. 27:17-22; 40:14-21.)

overall rating of "Does Not Meet Criteria" on her 2004
evaluation; however, Reeves noted that she was making
improvement.

Willoughby asserts that Reeves made remarks that she
considers to be discriminatory. For instance, Willoughby alleges
that Reeves told her that at her age she could retire and go into
the real estate business full-time, something she had been doing
part-time during her employment with Bellsouth. Additionally,
Willoughby contends that Reeves shrugged his shoulders and nodded
his head when she asked him whether he thought her attempts to
improve her performance through medical treatment would be "too
little, too late". She also asserts that Reeves expressed doubt
during her 2004 mid-year review about whether anyone else within
Bellsouth would hire her because of her "situation". However,
Reeves did allegedly suggest to Willoughby that she get a job
outside of Bellsouth. Lastly, Willoughby claims that in December
of 2004 Reeves told her that human resources wanted her off the
payroll by March 31, 2005.

Willoughby claims that on February 17, 2005, in a meeting
that she thought would be about her end-of-year evaluation,
Reeves presented her with a choice that ultimately forced her to
retire. Specifically, Willoughby claims that she was told that
she could either retire or be put on a sixty-day improvement
plan, known as the Performance Improvement Plan ("PIP"). Reeves

allegedly told Willoughby that if she made one mistake while on
the PIP, she would be fired. However, according to Willoughby,
Reeves was less clear about what would happen if the mistake was
not her fault. Willoughby also asserts that Reeves told her that
if she chose to stay on the job only to be subsequently
terminated, her benefits would be different from what they would
be if she retired. Willoughby contends that she retired from
Bellsouth on March 31, 2005 because she feared being terminated
under the PIP. At the time of her retirement, Willoughby was
fifty-five (55) years old.

On May 19, 2004, Willoughby underwent a neuropychological
evaluation by Dr. Richard Azrin. In his report, Dr. Azrin noted
that Willoughby reported problems with forgetfulness, panic
attacks, and depression. She also reported having problems with
stuttering caused by the panic attacks. Dr. Arzin also noted that
Willoughby told him that she had become much less accurate in her
job since the onset of these symptoms. Dr. Arzin diagnosed
Willoughby as having a "very mild case of lifelong ADHD"
(primarily inattentive type), as well as major depression and
panic disorder without agoraphobia. Despite these medical
conditions, Willoughby maintains that she was still able to
perform the central functions of her job and argues that some of
the errors attributed to her were the result of inaccurate data
submitted to her by other employees and a faulty calculator.

However, she does admit that some of the errors were caused by her inability to concentrate for long periods of time.

Willoughby alleges that Bellsouth failed to accommodate her disabilities by refusing to provide her with adequate training on the computer programs that she was using in her billing specialist role. Willoughby's main complaint centers around Bellsouth's refusal to send her to a training session on the Elixir software that she used to create mock-ups. Bellsouth claims that it only sent employees to the session in order to evaluate whether the company should purchase a new version of the Elixir software package. Bellsouth further alleges that it never purchased the new version of the software. At the time Reeves selected the personnel to attend the Elixir training, Willoughby was no longer performing the mock-up role. However, by the time the session occurred, Willoughby had been transferred back to doing mock-ups. Willoughby also requested training documents on some of the other computer programs that she used but alleges that she was either told that no training documents existed or was given incomplete documentation. According to Bellsouth, the training that Willoughby received was no different from that received by other employees in the same pay grade.

Willoughby's retaliation claim is based on her contention that her alleged constructive discharge was retaliation for her decision to seek counsel from Yolanda Turner in Bellsouth's human

resources department. According to Willoughby, she sought advice from Turner on how she could improve her performance after Reeves began suggesting that she retire. Willoughby alleges that Reeves began avoiding contact with her and treating her more abruptly after finding out that she met with Turner. Additionally, according to Willoughby, she was presented with the choice of retiring or being placed on the PIP up to two months after her last meeting with Turner.

Willoughby filed a complaint with the Equal Employment Opportunity Commission on August 16, 2005[5]. After receiving her right-to-sue letter, she filed suit in this court on July 28, 2006.

*Analysis*

*ADA Discrimination Claim*

The ADA provides that no employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2000). In order to establish a *prima facie* case of discrimination in violation of the ADA, Willoughby must demonstrate that she is: (1) disabled; (2) a qualified individual; and (3) that she was subjected to unlawful discrimination because of her

---

[5] By the court's calculation, Willoughby filed her complaint with the EEOC exactly 180 days after February 17, 2005, the earliest possible date for the purported adverse employment action.

disability. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004). If a plaintiff fails to establish this *prima facie* case, the employer is entitled to a judgment as a matter of law. *Gordon v. E.L. Hamm & Assoc.*, 100 F. 3d 907, 915 (11th Cir. 1996).

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual;(B) a record of such an impairment; or (C) being regarded as having such an impairment". 42 U.S.C. § 12102(2). Bellsouth argues that Willoughby has failed to establish that she has an impairment that substantially limits a major life activity. However, Willoughby contends that her impairments substantially limit the major life activities of learning, speaking, and working.[6]

One is *substantially limited* when an impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[7] *Toyota*, 534 U.S.

---

[6] There is no dispute that all three of these activities are considered to be "major life activities" under the regulations issued by the EEOC. *See* 29 C.F.R. § 1630.2(i). However, the Supreme Court has expressed some reluctance to classify "working" as a "major life activity." *See Toyoto Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 200 (2002). However, the Eleventh Circuit continues to treat an impairment in one's ability to work as an ADA disability. *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004). Thus, until the Supreme Court holds otherwise, this court will proceed on the assumption that "working" is a "major life activity" under the ADA.

[7] The EEOC defines the phrase "substantially limits" to mean: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii)Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life

at 198. The impairment must also be permanent or long term. *Id.* The Supreme Court has made clear that the determination of whether a disability exists is to be made on a case-by-case basis. *Id.* However, the terms of the statute are to be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197.

*Learning*

Willoughby alleges that her impaired ability to learn caused by her ADHD and depression adversely affected her ability to learn how to use the computer programs she was required to use as part of her billing specialist job at Bellsouth. However, Dr. Azrin's report makes the following observations with regard to Willoughby's ability to remember and pay attention:

> Memory test performance is superior and completely intact with no problem encoding and freely recalling information . . . . Visual memory is slightly worse than verbal memory but not to any clinically significant level. Her visual attention however is slightly worse than verbal attention, but still in the average range. Auditory attention is in the lower end of the average range. Sustained attention showed a few abnormalities but still was within functional limits.

(Pl.'s Dep. Exh. 2.) Although Dr. Azrin's report does not specifically mention Willoughby's ability to learn, her performance in tests designed to measure her memory and attention surely bear some relation to her ability to learn.

The ADA requires individuals seeking its protection "to prove

---

activity." 29 C.F.R. § 1630.2(j)(1).

a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Toyota*, 534 U.S. at 198 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)). Given this standard, the evidence in the record is insufficient to prove that Willoughby's ability to learn was substantially limited by her ADHD and depression.  This conclusion is partly based on the fact that Dr. Azrin's report, at best, fails to support Willoughby's claims about her inability to learn. *See Rossbach*, 371 F.3d at 1358 (noting that someone who is impaired "moderately below average" is not disabled under the ADA). Additionally, Willoughby's alleged difficulties in learning the computer programs needed for her job do not amount to a substantial limitation in a major life activity. In *Ristrom v. Asbestos Workers Local 34 Joint Apprentice Committee*, 370 F.3d 763, 771 (8th Cir. 2004), the Eight Circuit noted:

> [t]he mere fact that [plaintiff] was having obvious difficulty in passing the course for paramedic certification does not show that she was substantially limited in the major life activity of learning, any more that the fact that a particular individual might not be able to pass a course in physics or philosophy would allow an inference that all learning activity was substantially disabled.

(quoting *Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998)).

The mere fact that Willoughby had difficulty learning the skills required for one job does not mean that her ability to learn was "substantially limited," especially since there is no evidence

that she experienced difficulties in her other jobs at Bellsouth or in her real estate business. As the *Ristrom* court noted, "[i]nadequate performance in certain life endeavors does not necessarily reflect any disability in learning." 370 F.3d at 771. It also bears noting that basing a finding of substantial limitation of the ability to learn solely on Willoughby's performance at Bellsouth, as would be required in this case, would be inconsistent with the Supreme Court's admonition in *Toyota* that the finding of disability should not be based solely on "analyzing the effect of the impairment in the workplace." 534 U.S. at 201. Therefore, Willoughby has failed to present sufficient evidence to allow a reasonable jury to conclude that her ability to learn has been "substantially limit[ed]," as that term is used in the ADA.

*Speaking*

Willoughby asserts that her medical conditions limited the major life activity of speaking. The only evidence to support this allegation is contained in Dr. Azrin's evaluation, in which Willoughby reports to the doctor that she experiences stuttering associated with panic attacks. However, Dr. Azrin's evaluation also provides test results that suggest that Willoughby's ability to speak is normal. Specifically, the evaluation says that Willoughby's "[l]anguage was completely intact (Naming and Fluency)." Other that Dr. Azrin's evaluation, the record is completely devoid of any evidence to suggest that Willoughby's

11

ability to speak was in any way impaired. *See Calef v. Gillette Co.*, 322 F.3d 75, 85 (1st Cir. 2003) (noting lack of evidence to establish that plaintiff "could not perform the variety of speaking tasks central to most people's lives, outside the workplace as well as within"). Therefore, the record contains insufficient evidence upon which a jury could fairly conclude that Willoughby's ability to speak is limited at all, much less substantially limited.

*Working*

Lastly, Willoughby argues that her ability to work has been impaired by her ADHD and depression. Her evidence to support this contention is based, again, on her difficulties with the computer programs she was required to work with as a billing specialist at Bellsouth. Specifically, she contends that her inability to concentrate on small details impaired her ability to do the intense, detail-oriented job of a billing specialist. However, in order to establish disability based on impairment in the major life activity of working, Willoughby must allege that she is "unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999); *see also* 29 C.F.R. § 1630.2(j)(3)(i) (noting that plaintiff must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities"). In other words, "[t]he inability to perform a single, particular job does not constitute

a substantial limitation in the major life activity of working." *Rossbach,* 371 F.3d at 1359.

Given Willoughby's failure to even allege, much less present evidence to support the allegation that she is unable to perform a board range of jobs, the court cannot conclude that she has made out a *prima facie* showing that her ability to work has been substantially limited. In fact, Willoughby's own deposition testimony does not support the idea that her ability to work was impaired. Specifically, Willoughby never mentions having difficulties with the other jobs she held at Bellsouth (stenographer and administrative assistant) or the clerical/secretarial jobs she held before her employment at Bellsouth. Willoughby also worked part-time selling real estate during her employment with Bellsouth, including while working as a billing specialist, and continued to do so after her retirement. Additionally, Willoughby has failed to present any evidence that she could not perform successfully as a billing specialist at another company, perhaps one that did not require the use of the same type of computer programs that Bellsouth used. *See Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000) ("If jobs utilizing an individual's skills are available, that individual is not considered substantially limited in her ability to work."). At best, Willoughby has established that her impairments prevented her from working in a single position at a single company. Much more is

required to prove a significant limitation in the ability to work.

Accordingly, given the lack of evidence to support Willoughby's contentions, no reasonable jury could determine that she has an impairment that substantially limits one or more major life activities.

*"Regarded As" Claim*[8]

Even if Willoughby cannot establish an actual disability, the court must examine whether she was perceived as disabled by Bellsouth. The ADA provides that one who is "regarded" as having an impairment that substantially limits one or more major life activities qualifies as a "disabled" person. 42 U.S.C. § 12102(2)(c).  The EEOC regulations define one who is "regarded as having such an impairment" as an individual who (1) has a physical or mental impairment that does not substantially limit major life activities but is treated by his employer as constituting such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (3) has no illness or malady defined by the EEOC as a physical or mental impairment

---

[8] Willoughby also asserts that she is disabled because she has a record of impairment, as specified in 42 U.S.C. § 12102(2)(b). However, Willoughby has not identified any such "record" and the court cannot find one in the materials submitted by the parties. In any event, "the record-of-impairment standard is satisfied only if [plaintiff] actually suffered a physical impairment that substantially limited one or more of her major life activities." *Hilburn v. Murata Elec. N. Amer.*, 181 F.3d 1220, 1229 (11th Cir. 1999). Inasmuch as Willoughby has neither produced a record of impairment nor demonstrated any substantial impairment in a major life activity, she cannot be considered as disabled under the "record of such impairment" standard.

but is treated by her employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l); *Gordon*, 100 F.3d at 912-13. In order for a plaintiff to prevail on this theory, she must show two things: "(1) that the perceived disability involved a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach*, 371 F.3d at 1360 (quoting *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).

Willoughby argues that Bellsouth regarded her as disabled because her supervisors were aware of her ADHD and depression. However, an employer's general awareness of a employee's diagnosis is insufficient, in and of itself, to establish that the employer regarded the employee as disabled (i.e., substantially limited in a major life activity). *See Sutton*, 185 F.3d at 1209. Even if Willoughby's claim that Reeves expressed doubt about whether she could find another job with Bellsouth and nodded when asked by Willoughby whether he thought her attempts to get medical treatment would be "too little, too late" are true, these statements fail to establish that Reeves regarded Willoughby as "disabled," as that term is used in the ADA. Specifically, they do not demonstrate that Bellsouth regarded Willoughby's ability to learn, speak, or work as being substantially limited.

The evidence is insufficient to establish a perceived impairment to learning and speaking for almost the same reasons it is insufficient to establish an actual disability as to those major

life activities. There is no evidence to suggest that Bellsouth regarded Willoughby's ability to learn to be impairment outside of the workplace. At best, the evidence suggests Willoughby's supervisors at Bellsouth thought that her ADHD and depression adversely affected her ability to learn the computer programs she was required to use as a billing specialist. *See Sutton*, 185 F.3d at 1209 (noting that an employer's perception that an employee cannot perform a particular task does not establish that the employer regarded the employee as disabled). There is no evidence in the record to suggest that Bellsouth regarded Willoughby's ability to learn to be substantially impaired outside of the workplace setting. Similarly, Willoughby has failed to produce any evidence at all to support her assertion that Bellsouth regarded her ability to speak to be impaired.

As to Willoughby's alleged perceived impairment in her ability to work, she has failed to establish that Bellsouth considered her "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i); *see also Cash*, 231 F.3d at 1306. In other words, "[b]eing 'regarded as unable to perform only a particular job . . . is insufficient, as a matter of law, to prove that [the plaintiff] is regarded as substantially limited in the major life activity of working." *Collado v. United Parcel Serv. Co.*, 419 F.3d 1143, 1157 (11th Cir. 2005) (quoting *Murphy v. United Parcel Serv.*,

Inc., 527 U.S. 516, 525 (1999)). Even assuming that Reeves expressed doubt about Willoughby's ability to get another job at Bellsouth, such doubt does not establish that he regarded her as unable to get a job that utilized her skills. *See Sutton*, 527 U.S. at 493 (noting that one cannot establish a perceived disability by imputing the employment criteria of a single employer to all similar employers) *and Serrano v. County of Arlington*, 986 F. Supp. 992, 997 (E.D. Va. 1997) ("[T[he ADA seeks only to remedy perceived disabilities that, like actual disabilities, extend beyond [the] . . . isolated mismatch of [a particular] employer and employee.") (internal quotations and citations omitted). Willoughby's "regarded as" claim is further weakened by her allegation that Reeves suggested that she seek employment with other companies and/or work full-time in her real estate business, which suggests that he regarded her as being able to work outside of Bellsouth. Therefore, Willoughby has failed to demonstrate that there is a genuine issue of material fact as to whether she was regarded as disabled.

In sum, it appears that Willoughby's supervisors at Bellsouth ultimately came to the conclusion that she was unable to successfully perform her job as a billing specialist. It also appears that Willoughby performed certain aspects of her job well, but had difficulty mastering the computer programs she had to use. Indeed, Willoughby has admitted that her inability to focus on details caused her to make errors at work. Bellsouth's recognition

of Willoughby's problems does not mean that it regarded her as disabled. *See Hilburn*, 181 F.3d at 1230 ("Where a defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, a finding that plaintiff was regarded as disabled and, therefore, [is] entitled to the protections of the ADA[,] is inappropriate.") (internal quotations and citations omitted). Accordingly, Willoughby has failed to establish that she is disabled under the ADA.

*Qualified Individual*

Even if Willoughby was disabled under the ADA, she has failed to prove that she is a "qualified individual" with a disability. "To be a 'qualified individual' under the ADA, a person must be able to perform the essential functions of his or her job with or without a reasonable accommodation." *Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003). "'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000). In this case, there is little question that Willoughby was unable to perform the essential functions of her billing specialist job, as identified in her employee evaluations, without accommodation. As Willoughby has admitted, her impairments prevented her from performing her job to Bellsouth's expectations. Therefore, the question becomes whether she could have performed her job with a reasonable accommodation.

"The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001). The employer's "duty to provide a reasonable accommodation is not triggered unless a *specific demand* for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999) (emphasis added). The only specific request for accommodation that Willoughby allegedly made regarded additional training on computer programs. Her biggest complaint involves her inability to attend a training session for the Elixir software.

However, Willoughby has failed to establish that Bellsouth ever purchased the new version of the Elixir software that was the topic of the alleged training session. In fact, Willoughby testified that she does not know whether Bellsouth ever purchased the software. (Pl.'s Dep. 151-152.) Willoughby has also failed to submit any evidence to suggest that the training she received was any different from that received by any similarly-situated Bellsouth employee. Indeed, "the ADA does not require an employer to accommodate a disabled employee by making special, individualized training or supervision available in order to shepherd that employee through what is an essential and legitimate requirement of the job." *Hammel v. Eau Galle Cheese Factory*, 407

F.3d 852, 867 (7th Cir. 2005); *see also Warren v. Volusia County*, 188 Fed. Appx. 859, 863 (11th Cir. 2006) ("[R]etraining is not a reasonable accommodation."). Furthermore, while Willoughby suggests in her deposition that a short-term leave of absence might have lessened the impact of her impairments, she does not remember whether she ever requested such accommodation from Bellsouth and has failed to submit any evidence to demonstrate the reasonableness of such accommodation. Accordingly, there is insufficient evidence from which a reasonable jury could conclude that Willoughby is a "qualified individual."

*Subject to Unlawful Discrimination*

"To establish unlawful discrimination based on [a] disability, an employee must present evidence of an adverse employment action." *Barnhart v. Wal-Mart Stores, Inc.*, 206 Fed. Appx. 890, 892 (11th Cir. 2006). Willoughby argues that her retirement from Bellsouth qualifies as an adverse employment action because she was constructively discharged. In other words, Willoughby argues that she was forced to retire because the only alternative was being placed on a sixty-day PIP, during which she could be terminated for making one mistake. To show constructive discharge, Willoughby must show that the situation at Bellsouth was "so 'intolerable' that [she] had 'no choice' but to take early retirement." *Rowell v. Bellsouth Corp.*, 433 F.3d 794, 806 (11th Cir. 2005).

The fact that Willoughby might have been fired had she chosen

to remain at Bellsouth on the PIP program "is not sufficient to establish the intolerable conditions sufficient to justify a finding of constructive discharge because the possibility that a plaintiff may not remain employed is not by itself enough to place a reasonable person in the position of 'quit or be fired.'" *Id.; see also Saville v. IBM*, 188 Fed. Appx. 667, 670 (10th Cir. 2006) (noting that being placed on a PIP under which one complaint could result in termination does not constitute an "adverse employment action")*and Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) ("[W]e have held that criticism in performance reviews and institution of performance improvement plans, alone, do not constitute objectively intolerable conditions."). Interestingly, in her deposition, Willoughby refused to accept the proposition that she was "incapable" of performing for sixty days mistake-free. (Pl.'s Dep. 66:8-13.) Therefore, Willoughby has not established that she had "no objectively reasonable opportunity to remain employed" at Bellsouth. As such, no reasonable jury could find that Willoughby was constructively discharged.

Given that Willoughby cannot prove a *prima facie* case of disability discrimination, Bellsouth is entitled to judgment as a matter of law on this claim.

*Disability Retaliation and Age Discrimination*

Given the preceding discussion, Willoughby's disability retaliation and age discrimination claims can be disposed of rather

quickly.

In order to make out a *prima facie* case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Lucas*, 257 F.3d at 1260. Inasmuch as Willoughby has failed to demonstrate an adverse employment action, she cannot establish a *prima facie* case of retaliation. Even if Willoughby could prove a *prima facie* case, her retaliation claim would still fail, because she cannot show that Bellsouth's proffered legitimate, non-discriminatory reason (her poor job performance) for making her choose between retirement and being placed on the PIP is pretextual, given that she has acknowledged the defects in her job performance.[9] *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999).

Willoughby's age discrimination claim under the ADEA fails for the same reasons. In order to make out a *prima facie* ADEA discrimination claim, a plaintiff must show that she: (1) was a member of the protected age group; (2) was subjected to adverse

_____

[9] In attempting to prove that Bellsouth's proffered reason is pretextual for discrimination, Willoughby points to the following allegations: 1) Reeves telling her that working extra hours was not a good idea; 2) her not receiving adequate training; 3) Reeves spending more time with other employees; 4) Reeves having other employees check her work; and 5) Reeves's suggestions that she retire. However, even assuming these allegations to be true, they are insufficient to allow a reasonable jury to conclude that Bellsouth was motivated by discrimination or that its proffered reason is unworthy of credence. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). In other words, these allegations do little or nothing to suggest that Willoughby's poor job performance was "not the true reason" for its employment decision. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

employment action; (3) was qualified to do the job; and (4) was replaced by a younger individual. *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000). Since Willoughby has failed to establish that she was subject to an adverse employment action, she cannot establish a *prima facie* case.[10] And, as with her retaliation claim, Willoughby has not established that Bellsouth's proffered reason for their decisions regarding her employment status was pretextual for age discrimination. Therefore, as Willoughby has failed to raise genuine issues of material fact as to her ADA retaliation and ADEA discrimination claims, Bellsouth is entitled to judgment as a matter of law as to both.

## Conclusion

The court has little doubt that Willoughby was frustrated by her inability to perform her job at Bellsouth to the satisfaction of her supervisors; however, that frustration does not translate into a violation of federal employment law. The court will grant Bellsouth's motion for summary judgment as to all of Willoughby's

---

[10] Although Willoughby does not argue that any of her claims should be analyzed under a direct evidence framework, the court notes that any such effort would have been unsuccessful. While Willoughby argues that Reeves repeatedly suggested that she retire and work full-time in her real estate business, such comments do not constitute direct evidence of discrimination since they were unrelated to the decision-making process and do not establish discrimination "without inference or presumption." *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318,1330 (11th Cir. 1998). Similarly, Reeves alleged statement that no one at Bellsouth would hire Willoughby given her "situation" is not direct evidence since an inference is required to reach the conclusion that he was referring to her ADHD, depression, or age. *See also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) ("[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination") (internal quotations and citations omitted).

claims by separate order.

DONE this 19th day of September, 2007.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE